Andrew D. Skale, Esq.   (SBN 211096)
askale@mintz.com
Nathan R. Hamler, Esq.   (SBN 227765)
nhamler@mintz.com
MINTZ LEVIN COHN FERRIS GLOVSKY AND POPEO PC
3580 Carmel Mountain Road, Suite 300
San Diego, CA  92130
Telephone:  (858) 314-1500
Facsimile:   (858) 314-1501

Attorneys for Plaintiff
UPPER DECK INTERNATIONAL B.V.

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UPPER DECK INTERNATIONAL B.V., a Netherlands corporation,<br><br>Plaintiff,<br><br>v.<br><br>THE UPPER DECK COMPANY, a California corporation; THE UPPER DECK COMPANY, a Nevada Corporation; RICHARD McWILLIAM, an Individual; and Does 1-10<br><br>Defendants. | Case No.  **'11CV1741 LAB CAB**<br><br>**COMPLAINT FOR BREACH OF CONTRACT, INTENTIONAL INTERFERENCE WITH CONTRACTUAL RELATIONS, INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE, NEGLIGENT INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE, BREACH OF FIDUCIARY DUTY, AND AIDING AND ABETTING BREACH OF FIDUCIARY DUTY**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Upper Deck International, B.V. ("UDI"), for its complaint against defendants The Upper Deck Company, a California corporation, The Upper Deck Company, a Nevada corporation and Richard McWilliam ("McWilliam"), an individual and Does 1-10 (collectively, "Defendants") complains and alleges as follows:

**THE PARTIES**

1.   Plaintiff Upper Deck International, B.V. ("UDI") is a corporation organized under the laws of the Netherlands, with its principal place of business at Flevolaan 15, 1382 JX Weesp, The Netherlands.

1

2.     Defendant The Upper Deck Company ("Upper Deck California") is a California corporation having its principal place of business at 5909 Sea Otter Place, Carlsbad, California, 92010, and is doing business in the State of California and in this judicial district.

3.     Defendant The Upper Deck Company ("Upper Deck Nevada") is a Nevada corporation having its principal place of business at 5909 Sea Otter Place, Carlsbad, California, 92010, and is doing business in the State of California and in this judicial district. Upper Deck California and Upper Deck Nevada are referred to collectively herein as "UDC."

4.     Defendant Richard McWilliam ("McWilliam") is an individual who, upon information and belief, lives and resides within this judicial district. At all relevant times detailed herein, McWilliam was a director who served on Plaintiff's board of directors. At all relevant times detailed herein, McWilliam was also an officer and/or board member of UDC.

5.     Defendants Does 1-10 are unknown affiliates or related entities to the named defendants and, on information and belief, are residents of, or will be present in, the State of California and this judicial district or have transacted business in the State of California during the time period covered by this Complaint, and are subject to the jurisdiction of this Court. The identities and roles played by Does 1-10 are not currently known. UDI will amend its Complaint to include the name or names of said persons or entities when that information becomes readily available.

6.     On information and belief, each of the Defendants was the agent of each of the others, and committed the acts or omissions alleged herein on behalf of each of the other Defendants. On information and belief, each of the Defendants authorized, approved, ratified or directed the acts or omissions of each of the other Defendants that are alleged herein.

**JURISDICTION AND VENUE**

7.     This is a civil action brought by plaintiff UDI, a foreign corporation, involving claims of breach of contract, tortious interference with contract, breach of fiduciary duty, breach of duty of loyalty, aiding and abetting breach of fiduciary duty and aiding and abetting breach of duty of loyalty. This Court has jurisdiction over each of UDI's claims under 28 U.S.C. § 1332(a)(2) because UDI, a foreign corporation organized under the laws of The Netherlands, is diverse from

each of the defendants, and because the amount in controversy in this action exceeds $75,000, exclusive of interest and costs.

8. Venue is proper in this judicial district under 28 U.S.C. § 1391(a).

## FACTS COMMON TO ALL CLAIMS FOR RELIEF

9. In or about September 2006, Konami Digital Entertainment, B.V. ("KDE") and Upper Deck Panoceanic, C.V. ("UD Panoceanic") entered into an agreement under which UD Panoceanic was appointed as KDE's exclusive distributor of KDE's "Yu-Gi-Oh!" Trading Card Game in the United Kingdom, Ireland, France, Spain, Portugal, Germany, Austria, Italy, Belgium, The Netherlands, Luxembourg, Greece, Denmark, Finland, Sweden, Norway, Switzerland, Cyprus, Hungary, Poland, Slovakia, Latvia, Estonia, Lithuania, Czech Republic, Malta, Slovenia and South Africa (hereinafter referred to as the "Yu-Gi-Oh! Europe Contract").

10. At or around the same time, UDC became Konami Digital Entertainment, Inc.'s exclusive distributor of the "Yu-Gi-Oh!" Trading Card Game in the United States, Canada, Mexico, Guam, Oceania and Central and South America (hereinafter referred to as the "Yu-Gi-Oh! America Contract").

11. The Yu-Gi-Oh! Europe Contract contained a provision that allowed UD Panoceanic to appoint Plaintiff (formerly known as Upper Deck Europe B.V.) as UD Panoceanic's exclusive sub-distributor of the "Yu-Gi-Oh!" Trading Card Game in the relevant territories.

12. Contemporaneously upon entering into the Yu-Gi-Oh! Europe Contract, UD Panoceanic entered into a separate contract with Plaintiff whereby Plaintiff was appointed as UD Panoceanic's exclusive sub-distributor of the "Yu-Gi-Oh!" Trading Card Game in the relevant territories (hereinafter referred to as the "Sub-distributor Contract").

13. The Yu-Gi-Oh! Europe Contract also contained a provision that allowed KDE to terminate that contract immediately if the Yu-Gi-Oh! America Contract was "rightfully terminated pursuant to the termination clause(s) of such agreement (hereinafter referred to as the "Domino Clause").

14. As a director on Plaintiff's board, McWilliam was aware of the Domino Clause in the Yu-Gi-Oh! Europe Contract. McWilliam was also aware that, as allowed under the Yu-Gi-Oh!

1  Europe Contract, Plaintiff had been contractually appointed under the Sub-distributor Contract as
2  the exclusive sub-distributor of the "Yu-Gi-Oh!" Trading Card Game in the relevant territories.
3         15.    In or about the first half of 2008, Defendants orchestrated a scheme to produce and
4  distribute counterfeit Yu-Gi-Oh! Trading Cards that UDC was not authorized to produce or
5  distribute under the Yu-Gi-Oh! America Contract.
6         16.    Plaintiff (including its officers, employees and board members other than
7  McWilliam) was wholly unaware of and in no way complicit in Defendants' scheme.
8         17.    Upon discovery of Defendants' counterfeiting scheme, Konami Digital
9  Entertainment, Inc. promptly terminated the Yu-Gi-Oh! America Contract.  Konami Digital
10 Entertainment, Inc. also initiated legal proceedings against UDC (and others) in the Central District
11 of California (hereinafter, the "U.S. KDE Legal Action").  At or around the same time, invoking the
12 Domino Clause, KDE informed Plaintiff that KDE was also terminating the Yu-Gi-Oh! Europe
13 Contract, putting UDI's rights and revenues as sub-distributor under the Sub-distribution Contract
14 directly and gravely at risk.
15        18.    As such, when confronted with KDE's attempts to terminate the Yu-Gi-Oh! Europe
16 Contract under the Domino Clause, Plaintiff's Chief Executive Officer Nico Blauw promptly
17 contacted McWilliam, who assured Mr. Blauw and UDI that none of the Defendants had engaged in
18 any unlawful counterfeiting scheme or otherwise done anything unlawful that would justify Konami
19 Digital Entertainment, Inc's termination of the Yu-Gi-Oh! America Contract and KDE's attempted
20 termination of the Yu-Gi-Oh! Europe Contract.
21        19.    Having received such assurances from McWilliam (who also made such assurances
22 as the express or implied agent of the other Defendants) and in reliance on those assurances, UDI
23 took legal actions in Europe against KDE, at significant expense to UDI, to forestall KDE's
24 attempted termination of the Yu-Gi-Oh! Europe Contract and thereby protect UDI's rights under the
25 Sub-distribution Contract.  (hereinafter, "the Europe KDE Legal Action").  As a result of those
26 efforts, KDE's termination of the Yu-Gi-Oh! Europe Contract was temporarily halted, and the Yu-
27 Gi-Oh! Europe Contract remained in effect.  Further, KDE continued to accept additional orders
28 from UDI under the Yu-Gi-Oh! Europe Contract, for which UDI was required to pay KDE millions

of dollars to secure.

20. In or about April 2009, McWilliams admitted that his prior assurances were false, and that Defendants had in fact had engaged in an unauthorized counterfeiting scheme of Yu-Gi-Oh! Trading Cards. McWilliams made this admission well after UDI—in reliance on McWilliam's and Defendants' assurances that none of the Defendants had engaged in any unlawful counterfeiting scheme or otherwise done anything unlawful that would justify termination of the Yu-Gi-Oh! Europe Contract and UDI's rights under the Sub-distribution Contract—had invested millions of dollars in its legal efforts to stop KDE's termination efforts and in the subsequent orders that it placed with KDE. Later, Defendants also admitted their counterfeiting scheme to Konami Digital Entertainment, Inc., and its European affiliate KDE thereafter refused to fulfill millions of dollars in orders placed by UDI or to return the funds advanced by UDI to secure those orders.

21. Thereafter, in or around the time that the U.S. KDE Legal Action was set to begin trial, Defendants and Konami Digital Entertainment, Inc. were in discussions to settle that action. Defendants, however, were unable to fund the settlement amount demanded by KDE to settle the U.S. KDE Legal Action without additional funds. As such, Defendants requested that UDI loan UDC $1 million dollars to help fund the settlement. UDI, at all times having been led to believe by Defendants and reasonably believing that any settlement of the U.S. KDE Legal Action would also include a settlement of the Europe KDE Legal Action, agreed to loan UDC $1 million to help fund a settlement.

22. Accordingly, in or about January 2010, UDI and UDC entered into a contract whereby UDI agreed to loan, and UDC agreed to repay by no later than April 2010, the sum of $1 million.

23. Unbeknownst to UDI, however, the settlement that Defendants negotiated and agreed to did not resolve the Europe KDE Legal Action. Instead, McWilliam and UDC disregarded and misrepresented UDI's interests in negotiating settlement of the U.S KDE Legal Action. Indeed, at one point during those negotiations, again unbeknownst to UDI, Defendants falsely misrepresented during negotiations that UDI was not interested in resolving the Europe KDE Legal Action as part of settlement of the U.S. KDE Legal Action. At or around the same time, Defendants

represented to UDI that Konami was not interested in a worldwide settlement. UDI only discovered that the settlement did not resolve the Europe KDE Legal Action and learned of Defendants' misrepresentations regarding UDI's supposed lack of interest in resolving the Europe KDE Legal Action after Defendants convinced UDI to loan Upper Deck California and Upper Deck Nevada $1 million, and after Defendants executed the settlement agreements with Konami Digital Electronics, Inc. Despite the disappointing outcome of the settlement, UDC begged UDI to still loan UDC the $1 million so UDC could make the down payment on the settlement. UDI went through with the $1 million loan, believing in good faith that UDC would make good on its commitment to timely repay the loan in April 2010.

24. Since the settlement of the U.S. KDE Legal Action did not also settle the Europe KDE Legal Action, KDE was left free to continue to take aggressive legal action against UDI in Europe. KDI did exactly that: it continued to pursue significant monetary relief, including a claim for $64 million in damages against UDI and its CEO Nico Blauw for KDE's alleged damages it claimed to have suffered as a result of the discovery of Defendants' unlawful counterfeiting scheme and testimonies. KDE also levied and encumbered significant assets of UDI and UDI's CEO.

25. As a result of Defendants' unlawful counterfeiting scheme and their later disregard and misrepresentation of UDI's interests during settlement negotiations that led to settlement of the U.S. KDE Legal Action, UDI's business has been significantly and severely damaged. For example (and without limitation), UDI lost millions of dollars of revenues from lost sales of Yu-Gi-Oh! Trading Cards, which UDI had reasonably forecasted and reasonably expected to secure and receive under the Sub-distribution Contract during 2009 and 2010 (what would have been the last two years left under the Yu-Gi-Oh! Europe Contract, absent any renewal of that contract). Additionally, UDI lost millions of dollars in orders placed with KDE that ultimately went unfulfilled. And UDI's reputation among its other suppliers or prospective suppliers of toys or games in Europe has been seriously tarnished and negatively impacted by UDI's association with Defendants and Defendants' counterfeiting scheme. Once-existing suppliers have decided not to expand relationships with UDI. And UDI has lost significant prospective business with other suppliers. UDI was therefore forced to

1 let over 100 of its employees go and close offices in the UK, France, Spain, Italy and Australia.
2 Currently, UDI only employs 22 people.
3     26. Additionally, neither Upper Deck California nor Upper Deck Nevada have repaid
4 any of the $1 million loan made by UDI in January 2010. Their failure to repay this loan has only
5 put further pressure on UDI's cash position and ability to conduct business. And interest of over
6 $70,000 has already accrued on the past due loan amount.

## FIRST CLAIM FOR RELIEF

### Breach of Contract

### (Against Upper Deck California and Upper Deck Nevada)

10     27. Plaintiff realleges, adopts and incorporates by reference the allegations included in
11 the paragraphs herein as if they were fully set forth herein.
12     28. Plaintiff and UDC entered into a valid and enforceable contract through which
13 Plaintiff agreed to lend $1 million to UDC to help UDC fund the U.S. Settlement with Konami and
14 UDC agreed to repay the $1 million by on or about April 2010 ("the Loan Contract").
15     29. Plaintiff has performed all of its obligations under the Loan Contract, and any further
16 unperformed obligations (if any) are excused.
17     30. UDC materially breached the Loan Contract by failing to repay the $1 million loan
18 amount to Plaintiff by April 2010. Indeed, UDC has refused to repay the $1 million loan at all.
19     31. As a result of UDC's material breach of the Loan Contract, Plaintiff has suffered
20 direct and consequential damages in an amount to be proven at trial, but at a minimum in the
21 amount of $1 million plus interest incurred on this amount since the amount became due in or about
22 April 2010.

## SECOND CLAIM FOR RELIEF

### Intentional Interference with Contractual Relations

### (Against All Defendants)

26     32. Plaintiff realleges, adopts and incorporates by reference the allegations included in
27 the paragraphs herein as if they were fully set forth herein.
28

33. Defendants have intentionally interfered with the economic and contractual relationship between Plaintiff and certain of its clients.

34. In particular, UD Panoceanic entered into a valid contract with KDE in the form of the Yu-Gi-Oh! Europe Contract, benefits and rights under which specifically inured to Plaintiff under the Sub-distribution Contract between UD Panoceanic and UDI.

35. Defendants were aware of the Yu-Gi-Oh! Europe Contract's existence, were aware of the Sub-distribution Contract's existence, and were also aware that, through the Sub-Distribution Contract, Plaintiff was the direct and principal beneficiary of significant rights under the Yu-Gi-Oh! Europe Contract.

36. Upon information and belief, when Defendants intentionally engaged in the counterfeiting activity regarding Yu-Gi-Oh trading cards in the United States, Defendants knew that such activity would interfere with the Yu-Gi-Oh! Europe Contract and/or the Sub-distribution Contract, and/or knew that their intentional actions were substantially certain to interfere with the Yu-Gi-Oh! Europe Contract and/or the Sub-distribution Contract.

37. As a direct and proximate result of Defendants' actions, KDE terminated the Yu-Gi-Oh! Europe Contract, which interfered with the Sub-distribution Contract and with Plaintiff's significant rights under the Yu-Gi-Oh! Europe Contract as the sub-distributor appointed under that contract.

38. As a result of Defendants' unlawful actions, Plaintiff has been damaged in an amount to be proven at trial, but which exceeds $75,000 (exclusive of interest and costs), and which, at a minimum, includes millions of dollars of lost revenues to UDI resulting from UDI's loss of the last two years of sales it reasonably expected as sub-distributor under the Yu-Gi-Oh! Europe Contract.

39. The aforementioned acts of Defendants were willful, oppressive, and/or malicious. Plaintiff is therefore entitled to punitive damages in an amount to be proven at trial, in addition to all other damages and other relief.

///

///

## THIRD CLAIM FOR RELIEF

### Intentional Interference with Prospective Economic Advantage

### (Against all Defendants)

40. Plaintiff realleges, adopts and incorporates by reference the allegations included in the paragraphs herein as if they were fully set forth herein.

41. Under the Yu-Gi-Oh! Europe Contract, Plaintiff as a third party beneficiary to that contract, enjoyed a successful economic relationship with KDE. Defendants knew that Plaintiff had an existing economic relationship with KDE and that relationship included a future economic benefit for Plaintiff. Were it not for Defendants' unlawful counterfeiting scheme of Yu-Gi-Oh! Trading Cards, Plaintiff's economic relationship with KDE would have continued forward for at least the duration of the Yu-Gi-Oh! Europe Contract and likely beyond.

42. Defendants intentionally interfered with Plaintiff's economic relationship with KDE by intentionally engaging in the counterfeiting activity regarding Yu-Gi-Oh trading cards in the United States, when Defendants knew that such activity would interfere with Plaintiff's economic relationship with KDE, and/or knew that their intentional actions were substantially certain to interfere with Plaintiff's economic relationship with KDE.

43. Defendants' actions in interfering with Plaintiff's economic relationship with KDE were independently wrongful, at a minimum because Defendants' counterfeiting scheme was unlawful under U.S. laws, constituted a breach of the Yu-Gi-Oh! America Contract, and constituted a breach of McWilliam's duties owed to UDI as a then-board member.

44. As a direct result of Defendants' intentional interference with Plaintiff's prospective economic advantage and business relationship with KDE, Plaintiff has been damaged in an amount to be proven at trial, but which exceeds $75,000 (exclusive of interest and costs), and which, at a minimum, includes millions of dollars of lost revenues to UDI resulting from UDI's loss of the last two years of sales it reasonably expected under its business relationship with KDE.

45. The aforementioned acts of Defendants were willful, oppressive, and/or malicious. Plaintiff is therefore entitled to punitive damages in an amount to be proven at trial, in addition to all other damages and other relief.

## FOURTH CLAIM FOR RELIEF

### Negligent Interference with Prospective Economic Advantage

### (Against All Defendants)

46. Plaintiff realleges, adopts and incorporates by reference the allegations included in the paragraphs herein as if they were fully set forth herein.

47. Under the Yu-Gi-Oh! Europe Contract, Plaintiff as a third party beneficiary to that contract, enjoyed a successful economic relationship with KDE. Defendants knew that Plaintiff had an existing economic relationship with KDE and that relationship included a future economic benefit for Plaintiff. Were it not for Defendants' unlawful counterfeiting scheme of Yu-Gi-Oh! Trading Cards, Plaintiff's economic relationship with KDE would have continued forward for at least the duration of the Yu-Gi-Oh! Europe Contract and likely beyond.

48. McWilliam, who was then a board member of UDI, and UDC, as entities controlled and managed by McWilliam, owed a duty of care to the Plaintiff not to unreasonably interfere with Plaintiff's business relationships and affairs.

49. Defendants breached their duty of care owed to Plaintiff and thereby at least negligently interfered with Plaintiff's economic relationship with KDE when Defendants intentionally engaged in counterfeiting activity regarding Yu-Gi-Oh trading cards in the United States, when Defendants knew or reasonably should have known that such activity would interfere with Plaintiff's economic relationship with KDE, and/or knew or reasonably should have known that their intentional actions were substantially certain to interfere with Plaintiff's economic relationship with KDE.

50. Defendants' actions in interfering with Plaintiff's economic relationship with KDE were independently wrongful and at a minimum those actions were negligent, because Defendants' counterfeiting scheme was unlawful under U.S. laws, constituted a breach of the Yu-Gi-Oh! America Contract, and constituted a breach of McWilliam's duties owed to UDI as a then-board member.

51. As a direct result of Defendants' negligent interference with Plaintiff's prospective economic advantage and business relationship with KDE, Plaintiff has been damaged in an amount

to be proven at trial, but which exceeds $75,000 (exclusive of interest and costs), and which, at a minimum, includes millions of dollars of lost revenues to UDI resulting from UDI's loss of the last two years of sales it reasonably expected under its business relationship with KDE.

52. The aforementioned acts of Defendants were willful, oppressive, and/or malicious. Plaintiff is therefore entitled to punitive damages in an amount to be proven at trial, in addition to all other damages and other relief.

## FIFTH CLAIM FOR RELIEF

### Breach of Fiduciary Duty

### (Against McWilliam)

53. Plaintiff realleges, adopts and incorporates by reference the allegations included in the paragraphs herein as if they were fully set forth herein.

54. During all relevant times alleged herein, McWilliam was a board member and/or director of Plaintiff.

55. Under both the provisions of UDI's Articles of Association and under generally controlling law, McWilliam owed a fiduciary duty to Plaintiff.

56. McWilliam breached his fiduciary duty owed to Plaintiff, including but not limited to by (1) engaging in a counterfeiting scheme through UDC and attempting to cover up that scheme and (2) by disregarding and/or misrepresenting Plaintiff's interests in negotiating and reaching a U.S. settlement between UDC and Konami. When McWilliam orchestrated and later attempted to cover up the UDC counterfeiting scheme, he knew that if such scheme were discovered and exposed, it would substantially injure Plaintiff and Plaintiff's reputation. Further, McWilliam knew when he disregarded and/or misrepresented Plaintiff's interests in negotiating and reaching the U.S. Settlement between UDC and Konami that his actions would substantially injure Plaintiff, including but not limited to by leaving Plaintiff exposed to further legal action by Konami.

///
///
///
///

11

57. The aforementioned acts of McWilliam were willful, oppressive and/or malicious. Plaintiff is therefore entitled to punitive damages in an amount to be proven at trial, in addition to all other damages and injunctive and other relief.

58. As a direct and proximate cause of the breaches of duty referenced above, Plaintiff has been damaged in an amount to be proven at trial, but which exceeds $75,000 (exclusive of interest and costs).

## SIXTH CLAIM FOR RELIEF

### Aiding and Abetting Breach of Fiduciary Duty

### (Against Upper Deck California and Upper Deck Nevada)

59. Plaintiff realleges, adopts and incorporates by reference the allegations included in the paragraphs herein as if they were fully set forth herein.

60. Each of the Defendants knew that the conduct of McWilliam constituted breaches of his fiduciary duties owed to UDI and Defendants nevertheless gave McWilliam substantial assistance or encouragement in engaging in such conduct, and/or each of the Defendants gave such substantial assistance while McWilliam's own conduct, separately considered, constituted a breach of his duties to Plaintiff.

61. As a direct and proximate cause of the wrongful conduct of Defendants as alleged above, Plaintiff has been damaged in an amount to be proven at trial, but which exceeds $75,000 (exclusive of interest and costs).

62. The aforementioned acts of Defendants were willful, oppressive and/or malicious. Plaintiff is therefore entitled to punitive damages in an amount to be proven at trial, in addition to all other damages and injunctive and other relief.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that it be awarded judgment against Defendants in this action, as follows:

a. For general, compensatory and/or special damages in an amount according to proof at trial (but which, as alleged, exceeds the jurisdictional minimum of this Court, and includes, at a

1 minimum, the $1 million owed by UDC, as well as millions of dollars in lost profits to Plaintiff
2 and/or damages suffered by Plaintiff resulting from Defendants' unlawful conduct);
3     b.    For punitive and/or exemplary damages in an amount according to proof;
4     c.    For interest at the appropriate rate on the sums awarded;
5     d.    For costs of suit and attorneys' fees; and
6     e.    For any and all such other and further relief as the Court may deem appropriate.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all claims and issues so triable.

Dated:  August 4, 2011        MINTZ LEVIN COHN FERRIS GLOVSKY AND POPEO PC

        By  /s/  Andrew D. Skale, Esq.
            Andrew D. Skale, Esq.
            Nathan R. Hamler, Esq.

            Attorneys for Plaintiff
            UPPER DECK INTERNATIONAL B.V.

            Email: askale@mintz.com
                    nhamler@mintz.com

5458281v.1

# CIVIL COVER SHEET

JS 44 (Rev. 12/07)

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.)

## I. (a) PLAINTIFFS
Upper Deck International B.V., a Netherlands corporation

### DEFENDANTS
The Upper Deck Company, a California corporation

**(b)** County of Residence of First Listed Plaintiff _____
(EXCEPT IN U.S. PLAINTIFF CASES)

County of Residence of First Listed Defendant San Diego, CA
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE LAND INVOLVED.

**(c)** Attorney's (Firm Name, Address, and Telephone Number)
Andrew D. Skale, Mintz Levin Cohn Ferris Glovsky & Popeo PC
3580 Carmel Mtn. Rd., Ste. 300, SD, CA 92130; (858) 314-1500

Attorneys (If Known)
'11CV1741 LAB CAB

## II. BASIS OF JURISDICTION (Place an "X" in One Box Only)
- ☐ 1 U.S. Government Plaintiff
- ☐ 2 U.S. Government Defendant
- ☐ 3 Federal Question (U.S. Government Not a Party)
- ☒ 4 Diversity (Indicate Citizenship of Parties in Item III)

## III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff and One Box for Defendant)
(For Diversity Cases Only)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☒ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☒ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT (Place an "X" in One Box Only)

**CONTRACT**
- ☐ 110 Insurance
- ☐ 120 Marine
- ☐ 130 Miller Act
- ☐ 140 Negotiable Instrument
- ☐ 150 Recovery of Overpayment & Enforcement of Judgment
- ☐ 151 Medicare Act
- ☐ 152 Recovery of Defaulted Student Loans (Excl. Veterans)
- ☐ 153 Recovery of Overpayment of Veteran's Benefits
- ☐ 160 Stockholders' Suits
- ☒ 190 Other Contract
- ☐ 195 Contract Product Liability
- ☐ 196 Franchise

**REAL PROPERTY**
- ☐ 210 Land Condemnation
- ☐ 220 Foreclosure
- ☐ 230 Rent Lease & Ejectment
- ☐ 240 Torts to Land
- ☐ 245 Tort Product Liability
- ☐ 290 All Other Real Property

**TORTS - PERSONAL INJURY**
- ☐ 310 Airplane
- ☐ 315 Airplane Product Liability
- ☐ 320 Assault, Libel & Slander
- ☐ 330 Federal Employers' Liability
- ☐ 340 Marine
- ☐ 345 Marine Product Liability
- ☐ 350 Motor Vehicle
- ☐ 355 Motor Vehicle Product Liability
- ☐ 360 Other Personal Injury

**CIVIL RIGHTS**
- ☐ 441 Voting
- ☐ 442 Employment
- ☐ 443 Housing/Accommodations
- ☐ 444 Welfare
- ☐ 445 Amer. w/Disabilities - Employment
- ☐ 446 Amer. w/Disabilities - Other
- ☐ 440 Other Civil Rights

**TORTS - PERSONAL INJURY**
- ☐ 362 Personal Injury - Med. Malpractice
- ☐ 365 Personal Injury - Product Liability
- ☐ 368 Asbestos Personal Injury Product Liability

**PERSONAL PROPERTY**
- ☐ 370 Other Fraud
- ☐ 371 Truth in Lending
- ☐ 380 Other Personal Property Damage
- ☐ 385 Property Damage Product Liability

**PRISONER PETITIONS**
- ☐ 510 Motions to Vacate Sentence
- Habeas Corpus:
- ☐ 530 General
- ☐ 535 Death Penalty
- ☐ 540 Mandamus & Other
- ☐ 550 Civil Rights
- ☐ 555 Prison Condition

**FORFEITURE/PENALTY**
- ☐ 610 Agriculture
- ☐ 620 Other Food & Drug
- ☐ 625 Drug Related Seizure of Property 21 USC 881
- ☐ 630 Liquor Laws
- ☐ 640 R.R. & Truck
- ☐ 650 Airline Regs.
- ☐ 660 Occupational Safety/Health
- ☐ 690 Other

**LABOR**
- ☐ 710 Fair Labor Standards Act
- ☐ 720 Labor/Mgmt. Relations
- ☐ 730 Labor/Mgmt.Reporting & Disclosure Act
- ☐ 740 Railway Labor Act
- ☐ 790 Other Labor Litigation
- ☐ 791 Empl. Ret. Inc. Security Act

**IMMIGRATION**
- ☐ 462 Naturalization Application
- ☐ 463 Habeas Corpus - Alien Detainee
- ☐ 465 Other Immigration Actions

**BANKRUPTCY**
- ☐ 422 Appeal 28 USC 158
- ☐ 423 Withdrawal 28 USC 157

**PROPERTY RIGHTS**
- ☐ 820 Copyrights
- ☐ 830 Patent
- ☐ 840 Trademark

**SOCIAL SECURITY**
- ☐ 861 HIA (1395ff)
- ☐ 862 Black Lung (923)
- ☐ 863 DIWC/DIWW (405(g))
- ☐ 864 SSID Title XVI
- ☐ 865 RSI (405(g))

**FEDERAL TAX SUITS**
- ☐ 870 Taxes (U.S. Plaintiff or Defendant)
- ☐ 871 IRS—Third Party 26 USC 7609

**OTHER STATUTES**
- ☐ 400 State Reapportionment
- ☐ 410 Antitrust
- ☐ 430 Banks and Banking
- ☐ 450 Commerce
- ☐ 460 Deportation
- ☐ 470 Racketeer Influenced and Corrupt Organizations
- ☐ 480 Consumer Credit
- ☐ 490 Cable/Sat TV
- ☐ 810 Selective Service
- ☐ 850 Securities/Commodities/Exchange
- ☐ 875 Customer Challenge 12 USC 3410
- ☐ 890 Other Statutory Actions
- ☐ 891 Agricultural Acts
- ☐ 892 Economic Stabilization Act
- ☐ 893 Environmental Matters
- ☐ 894 Energy Allocation Act
- ☐ 895 Freedom of Information Act
- ☐ 900 Appeal of Fee Determination Under Equal Access to Justice
- ☐ 950 Constitutionality of State Statutes

## V. ORIGIN (Place an "X" in One Box Only)
- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from another district (specify)
- ☐ 6 Multidistrict Litigation
- ☐ 7 Appeal to District Judge from Magistrate Judgment

## VI. CAUSE OF ACTION
Cite the U.S. Civil Statute under which you are filing (Do not cite jurisdictional statutes unless diversity):
28 U.S.C. Section 1331
Brief description of cause:
Breach of Contract; Tortious Interference; Breach of Fiduciary Duty

## VII. REQUESTED IN COMPLAINT:
☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23
DEMAND $ Greater than $75,000
CHECK YES only if demanded in complaint:
JURY DEMAND: ☒ Yes ☐ No

## VIII. RELATED CASE(S) IF ANY
(See instructions): JUDGE _____ DOCKET NUMBER _____

DATE 08/04/2011
SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**
RECEIPT # _____ AMOUNT _____ APPLYING IFP _____ JUDGE _____ MAG. JUDGE _____

JS 44 Reverse (Rev. 12/07)

## INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

### Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

**I.**   **(a) Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

**(b) County of Residence.** For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

**(c) Attorneys.** Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II.**   **Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.C.P., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.

United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.

United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.

Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the United States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.

Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. (See Section III below; federal question actions take precedence over diversity cases.)

**III.**   **Residence (citizenship) of Principal Parties.** This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

**IV.**   **Nature of Suit.** Place an "X" in the appropriate box. If the nature of suit cannot be determined, be sure the cause of action, in Section VI below, is sufficient to enable the deputy clerk or the statistical clerks in the Administrative Office to determine the nature of suit. If the cause fits more than one nature of suit, select the most definitive.

**V.**   **Origin.** Place an "X" in one of the seven boxes.

Original Proceedings. (1) Cases which originate in the United States district courts.

Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441. When the petition for removal is granted, check this box.

Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.

Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.

Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.

Multidistrict Litigation. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407. When this box is checked, do not check (5) above.

Appeal to District Judge from Magistrate Judgment. (7) Check this box for an appeal from a magistrate judge's decision.

**VI.**   **Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity.**   Example:   U.S. Civil Statute: 47 USC 553
Brief Description: Unauthorized reception of cable service

**VII.**   **Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.

Demand. In this space enter the dollar amount (in thousands of dollars) being demanded or indicate other demand such as a preliminary injunction.

Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII.**   **Related Cases.** This section of the JS 44 is used to reference related pending cases if any. If there are related pending cases, insert the docket numbers and the corresponding judge names for such cases.

**Date and Attorney Signature.** Date and sign the civil cover sheet.