NICHOLAS & BUTLER, LLP
   Craig M. Nicholas (SBN 178444)
   Alex Tomasevic (SBN 245598)
225 Broadway, 19th Floor
San Diego, California 92101
Telephone: (619) 325-0492
Facsimile: (619) 325-0496
Email: cnicholas@nblaw.org
       atomasevic@nblaw.org

Attorneys for Defendants/Counterclaimants
The Upper Deck Company (CA & NV)
and Richard McWilliam

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| UPPER DECK INTERNATIONAL B.V., a Netherlands corporation,<br><br>            Plaintiff,<br>v.<br><br>THE UPPER DECK COMPANY, a California corporation; THE UPPER DECK COMPANY, a Nevada Corporation; RICHARD McWILLIAM, an Individual; and Does 1-10,<br><br>            Defendants. | CASE NO.: 11CV1741 LAB (CAB)<br><br>**COUNTERCLAIM BY THE UPPER DECK COMPANY FOR:**<br><br>  **1. BREACH OF FIDUCIARY DUTY**<br>  **2. WASTE OF CORPORATE ASSETS**<br>  **3. CONVERSION**<br>  **4. DECLARATORY RELIEF**<br><br>Hon. Larry Alan Burns<br><br>Complaint Filed: August 4, 2011 |
| THE UPPER DECK COMPANY, a Nevada Corporation,<br><br>            Counterclaimant,<br>v.<br><br>UPPER DECK INTERNATIONAL B.V., a Netherlands corporation; NICO BLAUW, an Individual; and Roes 1-20,<br><br>            Counterclaim-Defendants. | |

COUNTERCLAIM

11CV1741 LAB CAB

Defendant/Counterclaimant The Upper Deck Company, a Nevada corporation ("Counterclaimant" or "UD Nevada") by and through its attorneys brings this counterclaim against Upper Deck International, B.V. ("UDI") and its principal, Nico Blauw. UD Nevada hereby alleges, upon information and belief, as follows:

## I.

## INTRODUCTION

1. This is a direct counterclaim by UD Nevada against UDI's Chief Executive Officer ("CEO"), Counterclaim-Defendant Nico Blauw, seeking to remedy his breaches of fiduciary duty, breach of duty of care, waste of corporate assets and fraudulent conversion, which damaged UDI and its shareholders. This action also seeks declaratory relief finding that a September 15, 2010 transfer of 52.5% of UDI, to an entity under Blauw's control, is invalid and unenforceable.[1]

2. UDI is a is a worldwide sports and entertainment company emphasizing sports and entertainment trading cards and trading card games as well as the creation and selling of sports and entertainment collectibles and memorabilia.

3. Counterclaim-Defendant Nico Blauw started as an employee of The Upper Deck Company LLC (a related non-party) in May of 1997. In May of 2007, Blauw became the CEO of UDI. During Blauw's reign as CEO, Counterclaim-Defendant Blauw mis-managed UDI to the detriment of UDI and its shareholders.

## II.

## PARTIES

4. Defendant/Counterclaimant UD Nevada is a Nevada corporation having its principal place of business in Clark County, Nevada and is doing business in the State of California and in this judicial district.

---

[1] UD Nevada was assigned these causes of action by Upper Deck B.V. ("UD BV"). UD BV was once the 100% owner of UDI and after the (invalid) transfer of the 52.5% ownership-stake, maintained, at a minimum, the remaining 47.5%. UD BV was incorporated on January 13, 1998. UD BV is the holding company to which Upper Deck International, B.V. ("UDI") is the operating company. UD BV, owner and parent company of UDI, assigned its rights and remedies regarding its interest in UDI to Upper Deck Nevada prior to the filing of this counterclaim.

5. Counterclaim-Defendant Nico Blauw ("Blauw") is an individual who resides in The Netherlands, and who used to live within this District. In May of 2007, Blauw became UDI's Chief Executive Officer and was responsible for the day to day management of UDI. In March of 2009, Blauw managed and administered UDI from The Upper Deck Company's corporate headquarters in Carlsbad, California. Again, in September of 2009, Blauw returned to The Upper Deck Company's Carlsbad offices to manage and operate UDI remotely. On February 6, 2010, Nico Blauw became director of UDI. In September of 2010, an entity under Blauw's control purchased 52.5% of UDI from UD BV (UD Nevada's assignor).

6. Plaintiff/Counterclaim Defendant UDI is a corporation organized under the laws of the Netherlands, with its principal place of business at Flevolaan 15, 1382 JX Weesp, The Netherlands.

7. Roes 1-20 are unknown affiliates or related entities to the Counterclaim-Defendants and, are residents of, or will be present in, the State of California and this judicial district or have transacted business in the State of California during the time period covered by this Counterclaim, and are subject to the jurisdiction of this court. The identities and roles played by Roes 1-20 are not currently known. Counterclaimant will amend its complaint to include the name or names of said persons or entities when that information becomes readily available.

### III.

### JURISDICTION AND VENUE

8. There is federal subject matter jurisdiction pursuant to 28 U.S.C. section 1332. UDI is a foreign corporation and Blauw is a resident of the Netherlands. UD Nevada is a Nevada corporation and is doing business in the State of California and in this judicial district. The amount in controversy exceeds $75,000 exclusive of interest and costs.

9. Venue is proper in this Court pursuant to 28 U.S.C. section 1391 because this is the judicial district in which UD Nevada resides, and in which a substantial part of the events that caused harm to UD Nevada occurred.

10. Also, UD Nevada's counterclaims arise from the same transaction or occurrence that is the subject matter of UDI's claims, and are therefore compulsory.

11. UD Nevada's compulsory counterclaims are properly before the court because this court has subject matter jurisdiction over UDI's claims. Venue is proper over UD Nevada's counterclaims because venue over UDI's claims is proper.

## IV.

## FACTS COMMON TO ALL CLAIMS FOR RELIEF

**Konami B.V. Lawsuit**

12. On April 19, 2010, Konami Digital Entertainment, B.V. ("Konami") initiated legal proceedings against various Upper Deck European entities and Blauw. This is the same lawsuit mentioned in UDI's original complaint.

13. As part of the lawsuit, Konami sought injunctive relief by having the court freeze all of Blauw's assets and bank accounts. Consequently, Blauw had a vested interest in seeking immediate resolution of the dispute in order to protect his own personal assets.

14. Upon notice of his assets being frozen, Blauw immediately took steps in order to limit his personal liability to the detriment of UDI and UD BV. Blauw controlled the defense of the case for UD BV, including negotiating the settlement. Blauw's position during the negotiations was self-serving and clearly created a conflict of interest with his fiduciary duties owed to UDI and UD BV. Blauw never disclosed this conflict of interest. Rather than expose himself to personal liability, on July 27, 2010, Blauw agreed to a significant settlement.

15. Despite being specifically advised that the settlement terms were in excess of UDI's actual liability, Blauw continued to aggressively push for a quick resolution. Blauw's only objective was to shield himself from personal liability.

16. In negotiating the settlement agreement, Blauw acted for his own personal gain and security and not in the best interest of UDI and its owner, UD BV. Rather than acknowledge Blauw's conflict, he entered into an extremely unfavorable settlement which isolated him from any personal liability.

**Breach of Fiduciary Duties Owed By Counterclaim-Defendant Blauw**

17. By reason of Counterclaim-Defendant Blauw's position at UDI as the CEO and a member of the Board of Directors, Blauw accepted a fiduciary relationship with UD BV. Blauw owed UDI, as well as UD BV, the highest duty of good faith, fair dealing, loyalty, and full, candid and adequate disclosure.

18. To discharge these fiduciary duties required Counterclaim-Defendant Blauw to exercise reasonable and prudent supervision over the management, policies, practices, controls and financial affairs of UDI, and to ensure that UDI issued truthful statements about its financial condition to both its own Board of Directors and to the Board of the Directors of its holding company, UD BV. This application of due care and diligence required, among other things, that Blauw:

    a. Exercise reasonable control and supervision over the officers, employees, and agents of UDI;

    b. Remain informed about how UDI conducted its operations;

    c. Maintain sufficient insight in and control over costs and cash flow of UDI;

    d. Ensure the prudence of the policies and practices undertaken or proposed to be undertaken by UDI;

    e. Ensure that UDI complied with its legal obligations and requirements, among other things, including the duty to disseminate truthful and accurate statements to shareholders and the timely filing of financial statements with the public register of the Dutch Chamber of Commerce;

    f. Make a reasonable investigation upon receiving notice or information of an imprudent or unsound decision, condition, or practice, and take steps to correct any imprudent or unsound decision, condition, or practice;

    g. Provide material corporate information to other members of the Board of Directors;

    h. Conduct the affairs of UDI in an efficient, business-like manner so as to make it possible to provide the highest quality performance of its business and to thereby maximize the

profits to its owners.

19. In accordance with his fiduciary duties of loyalty and good faith, Counterclaim-Defendant Blauw, as a director and officer of UDI, was obligated to refrain from participating in any transaction where his loyalties were divided. Here, Blauw's loyalties were divided between his own self-interests in protecting his individual liability by negligently and recklessly handling the financial affairs of UDI to the detriment of UDI and its owner, UD BV (again, UD Nevada's assignor).

**Blauw's Mismanagement and Wrongful Withholding of UDI Financial Statements**

21. As CEO of UDI, Blauw is responsible for its management and operations.

22. Unfortunately, Blauw has repeatedly failed to conduct its affairs in an efficient and business-like manner. For example, UDI has a staggering ratio of managers to staff. In January of 2011, the commercial department at UDI had 17 managers out of 23 total employees. Blauw's overstaffing of UDI has created excessive overhead expenses and labor costs. Such mismanagement constitutes a misuse and waste of corporate assets and has harmed UDI.

23. Blauw's mismanagement of UDI is also reflected in UDI's incomprehensible, or sometimes non-existent, financial statements.

24. On December 22, 2010, it was resolved at a UDI board meeting that: (i) shareholder financials would be presented to UD BV within 30 days of month end, and (ii) the board members of UDI would receive the shareholder financials by the 15th of each month.

25. On March 5, 2011, Mr. McWilliam, on behalf of UD BV, requested that Blauw provide him with, among other things, UDI's annual operating plan and the business plan for 2011. Such information is discoverable by UD BV, as an owner of UDI, and necessary to assess the financial position of UDI. It was not provided.

26. Again, on March 22, 2011, Mr. McWilliam, on behalf of UD BV, requested information pertaining to UDI's financials. Once more Blauw refused to provide such information. As such, UD BV was unable to assess the economic viability of UDI, a right it holds as its owner and parent company.

27. Moreover, Blauw's inability, and downright refusal, to provide financial statements of UDI was not limited to UD BV requests. On July 28, 2010, outside accountants Ernst & Young informed Blauw that it had not received sufficient information regarding UDI and UD BV's consolidated financials, thus, rendering it unable to provide the financial statements 2008/2009 of UD BV. Additionally, Ernst & Young explained that UDI and UD BV's unaudited financial statements 2008/2009 were delinquently filed with the public register of the Dutch Chamber of Commerce. Under Dutch law, the failure to timely publish the financial statements triggers a statutory presumption that UDI and UD BV's management materially breached its duties. Consequently, Mr. McWilliam, as a member of UDI and UD BV's board, as well as UD BV itself, were exposed to liability for Blauw's mismanagement. Additionally, Blauw's failure to file the 2008/2009 consolidated statements of UDI and UD BV caused UDI to lose the benefit of a statutory exemption to publish its own 2009 financial statements before January 31, 2010.

28. This was not Blauw's first oversight. Blauw's pattern of mismanagement is extensive. A year earlier, Blauw negligently filed UDI and UD BV's 2007/2008 consolidated financial statements belatedly. Consequently, the filing of UDI's 2008 financial statements was not permitted.

29. Furthermore, Blauw's mismanagement of UDI is evidenced by his failure to ensure that VAT returns of the foreign branches of UDI were timely filed. Specifically, Blauw's overdue filing of UDI's VAT returns for the third and fourth quarter of 2010 created serious problems for UDI with foreign tax authorities, and exposed its shareholders to liability. As a consequence, UDI incurred significant costs in order to remedy Blauw's delinquency, causing further damage to UD Nevada's assignor (UD BV).

**Blauw Takes Advantage of Mr. McWilliam's Health Issues and Wrestles Away Control of UDI, from UD BV**

30. In June of 2008, Mr. Richard McWilliam, sole owner and principal of assignor UD BV, underwent open heart surgery. Around that same time, Mr. McWilliam began battling an addiction to alcohol and prescription medication.

31. Quickly, Mr. McWilliam's health rapidly deteriorated. The latter half of 2009 was filled with numerous hospital appointments, emergency room visits, and medical evaluations.

32. As a consequence of his worsening health, Mr. McWilliam did not have the capacity to manage The Upper Deck Company, a California corporation and The Upper Deck Company, a Nevada corporation (collectively referred to as "UDC"). As such, Mr. McWilliam requested that Blauw, who was mindful of Mr. McWilliam's grave health issues, manage and operate UDC and UDI in Carlsbad, California beginning on March 23, 2009 for approximately four (4) weeks.

33. Understanding and acknowledging his need to seek serious rehabilitative medical care, in May of 2009, Mr. McWilliam voluntarily admitted himself into the Betty Ford Clinic for treatment. Mr. McWilliam remained at the Clinic during the entire month of May, 2009.

34. Unfortunately, Mr. McWilliam's battle with alcohol and drug abuse persisted. Thus, on September 11, 2009, Blauw returned to UDC's headquarters in Carlsbad, California, to manage and operate UDC and UDI. During this stay in Carlsbad, Blauw managed and operated UDC and UDI for approximately two (2) weeks. Mr. McWilliam relied on Mr. Blauw.

35. Mr. McWilliam's impaired medical condition endured until October of 2010. In 2010 alone, on approximately 10 occasions, Mr. McWilliam was admitted into the emergency room.

36. Again, from September 17, 2010 until October 16, 2010, Mr. McWilliam was an inpatient at a rehabilitation center for mental and physical healthcare.

**The Sale of UDI for One Euro**

37. From the time of UDI's incorporation, UD BV was its sole owner. Mr. McWilliam, as UD BV's sole shareholder and member of its Board of Directors was UD BV's chief decision maker.

38. In November of 2009, Blauw initiated discussions with Mr. McWilliam for the purchase of UD BV's interest in UDI. Originally, Blauw offered, by and through his company

Europraxis, to purchase 35% of UDI from UD BV for 512.834 Euros. Mr. McWilliam rejected this offer.

39. Blauw, apparently, was unwilling to take "no" for an answer. Thus, from November 2009 until March 2010 Blauw repeatedly and continuously pressured Mr. McWilliam with drafts and proposals of a purchase agreement requesting that he sign them. Each draft included provisions designed to grant greater authority and discretion to Blauw while concurrently lessening UD BV's control and involvement in UDI. Significantly, during this entire period, Mr. McWilliam was undergoing medical treatment and in an impaired mental and physical state. Mr. McWilliam's health greatly impacted his capacity to understand, appreciate, and realize the significance of these discussions. At all times relevant, Blauw was fully aware of Mr. McWilliam's mental and physical condition.

40. Regardless, on February 25, 2010, Blauw signed and presented a draft of a purchase agreement for UDI. Soon thereafter, however, on March 11, 2010, Blauw rescinded his acceptance. All the while, Mr. McWilliam was undergoing extensive medical treatment, therapy, and rehabilitation.

41. As Mr. McWilliam was fighting against substance abuse and related medical problems, Blauw continued to aggressively coerce him to sell UDI. In June of 2010, Blauw presented Mr. McWilliam with a new proposal for the purchase of UDI. Notably, this draft was for the purchase of a majority interest in UDI. Specifically, the terms outlined in the proposed transfer called for the sale of 51% of UDI to another entity owned by Blauw in exchange for the sensational price of 1 Euro (about $1.35 today). Given Mr. McWilliam's impaired capacity and Blauw's admitted knowledge regarding such, the timing of such a proposal is highly suspicious.

42. Unfortunately, in September of 2010, Blauw's wish to steal UDI from Mr. McWilliam was realized. On September 15, 2010, Mr. McWilliam, in his impaired cognitive state, signed a document calling for UD BV, by and through MPR Trust, to sell 52.5% of UDI to Mr. Blauw's entity for one (1) Euro (hereinafter referred to as "Purchase Agreement"). After execution of the Purchase Agreement UD BV held a 47.5% interest and BOE held a 52.5%

COUNTERCLAIM
11CV1741 LAB CAB

interest in UDI. Two days later, Mr. McWilliam was re-admitted into a rehabilitation center for substance abuse.

## V.

### FIRST CLAIM
**(Breach of Fiduciary Duty)**
**Against Nico Blauw and Roes 1-20.**

43.   UD Nevada incorporates by reference the allegations contained in the paragraphs above, as if fully set forth here.

44.   Blauw, as an officer and director of UDI and by virtue of the trust, responsibility, and confidence reposed in him by UDI and UD BV, owed a fiduciary obligation to, among other things: (a) act with candor toward UDI and UD BV, including providing full disclosure regarding to financials; (b) hold and maintain in strict confidence confidential information acquired by him in his capacity as an employee, officer, and director of UDI; and (c) refrain from using confidential information of UDI to compete with it; and (d) generally act in the best interests of UDI and UD BV.

45.   Counterclaim-Defendant Blauw owed UD BV and UDI the fiduciary obligation of loyalty which mandates that the best interest of the corporation, UDI, and its parent company, UD BV, take precedence over any interests possessed by a director, officer, or controlling shareholder and not shared by the shareholders generally.

46.   Included in the duty of care and loyalty in UDI and UD BV is the obligation to act in good faith.

47.   A director, officer, or other corporate fiduciary cannot act loyally towards UDI unless he believes in good faith that his actions are in UDI's best interest.

48.   Counterclaim-Defendant Blauw breached his fiduciary duty of loyalty and his obligation to act at all times in good faith to UDI and UD BV by, among other things: (a) misstating and omitting facts regarding the financials, including costs and cash flow, of UDI; (b) wasting corporate assets with excessive overhead and labor costs; (c) failing to publish timely financial statements with the Dutch Chamber of Commerce; (d) failing to timely file VAT returns

of UDI's foreign branches; (e) negotiating the Konami settlement to protect his own interests at the expense of UDI and UD BV; (f) ignoring requests by Mr. McWilliam, on behalf of UD BV, to correct erroneous reports that Blauw submitted to the bank in order to obtain a new credit agreement for UDI; (g) refusing to cooperate with McWilliam, UD BV, and their consultants' requests for urgent documentation related to a Dutch tax audit being conducted against both UD BV and related entities; and (h) not acting in the best interest of UDI and UD BV.

49. As a direct and proximate result of Blauw's breaches of fiduciary duty, UD BV has and will continue to sustain damages. The precise nature and amount of such accrued and continuing damages are, on information and belief, substantial and in excess of the jurisdictional minimum of this court.

50. In committing the acts alleged herein, Blauw acted with oppression, fraud, malice, and a willful and conscious disregard of UD BV's rights.

**VI.**

**SECOND CLAIM**
**(Waste of Corporate Assets)**
**Against Nico Blauw and Roes 1-20.**

51. UD Nevada incorporates by reference the allegations contained in the paragraphs above, as if fully set forth here.

52. As a result of the misconduct described above, Counterclaim-Defendant wasted corporate assets by: (a) failing to ensure proper financial accounting for the benefit of UDI and UD BV; (b) incurring substantial costs in remedying the failure to timely file VAT returns of the foreign branches of UDI; and (c) incurring excessive and unreasonable overhead and labor costs.

53. As a result of the waste of corporate assets, Counterclaim-Defendant Blauw is liable to UDI and UD Nevada (as the assignee of UD BV's rights).

54. UD BV has no adequate remedy at law.

11
COUNTERCLAIM
11CV1741 LAB CAB

## VII.

### THIRD CLAIM
### (Conversion)
### Against Nico Blauw and Roes 1-20.

55. UD Nevada incorporates by reference the allegations contained in the paragraphs above as if fully set forth here.

56. Since incorporation of UDI, UD BV was sole owner of UDI.

57. UD BV believes that Blauw intentionally and fraudulently forced the conveyance of UD BV's majority interest in UDI and still possesses that majority interest today. Blauw took this property while Mr. McWilliam, on behalf of UD BV, was incapacitated and unable to willingly and voluntarily enter into the Purchase Agreement.

58. As a direct and proximate result of Blauw's conversion of UD BV's property, UD BV has sustained and will continue to sustain damages. The precise nature and amount of such accrued and continuing damages is not known by UD BV and cannot be ascertained now, but such damages are, on information and belief, substantial and in excess of the jurisdictional minimum of this court.

59. In committing the acts alleged herein, Blauw acted with oppression, fraud, malice, and a willful and conscious disregard of UD BV's rights.

## XIII.

### FOURTH CLAIM
### (Declaratory Relief)
### Against UDI and Nico Blauw and Roes 1-20.

60. UD Nevada incorporates by reference the allegations contained in the paragraphs above as if fully set forth here.

61. An actual controversy now exists between UD BV and BOE concerning their respective rights, duties, and obligations under the Purchase Agreement. UD BV contests that the Purchase Agreement is valid and otherwise contends that the Purchase Agreement is unenforceable because Mr. McWilliam was not of sound mind when executing it on behalf of UD BV.

62. UD BV desires a judicial determination and declaration of the parties' respective rights, ownership, and control of UDI under the Purchase Agreement, and specifically that the transaction is void or voidable.

## IX.

## **PRAYER FOR RELIEF**

WHEREFORE, UD Nevada requests that the court enter an order or judgment against Blauw and UDI as follows:

a. A declaration that Counterclaim-Defendant Blauw breached his fiduciary duties owed to UDI and its owner, UD BV;

b. A determination that UDI shall take all necessary actions to reform and improve its corporate governance and procedures to comply with the applicable laws and to protect them and the shareholders from a repeat of the damaging events described herein;

c. For compensatory damages according to proof;

d. For general damages according to proof;

e. For exemplary and punitive damages;

f. For restitution and disgorgement according to proof;

g. For declaratory relief finding that Mr. McWilliam did not have capacity to enter into the Purchase Agreement on behalf of UD BV; and is thus rescinded;

h. For reasonable attorney's fees and costs where allowable;

i. For prejudgment interest on all amounts claimed; and

j. For such other and further relief as this court deems just and proper.

## X.

## **DEMAND FOR JURY TRIAL**

Counterclaimant UD Nevada hereby demands trial by jury in this action.

Respectfully submitted,

**NICHOLAS & BUTLER, LLP**

/s/ Alex Tomasevic

Dated: September 29, 2011          By: _____
                                         Craig M. Nicholas
                                         Alex Tomasevic
                                         Attorneys for Defendants